UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HILARIO CASTILLO,<br><br>　　　　　　Plaintiff,<br>v.<br><br>PENTAGON FEDERAL CREDIT UNION d/b/a PENFED CREDIT UNION, and JOHN DOES 1-25,<br><br>　　　　　　Defendants. | Civil Action No.:<br><br>**COMPLAINT and**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Hilario Castillo ("Plaintiff"), by and through his attorneys, alleges against the above-named Defendants, PENTAGON FEDERAL CREDIT UNION d/b/a PENFED CREDIT UNION (hereinafter "PENFED"), and John Does 1-25, collectively ("Defendants") their employees, agents, and successors the following:

**PRELIMINARY STATEMENT**

1.　Plaintiff brings this action for damages and declaratory and injunctive relief arising from the Defendants' violation of 15 U.S.C. § 1681 *et seq.*, the Fair Credit Reporting Act (hereinafter "FCRA"), which, amongst other obligations, places responsibilities on furnishers of information to credit reporting agencies ("CRAs").

2.　The Coronavirus Aid, Relief and Security ("CARES Act"), signed into law on March 27, 2020[1], placed further responsibilities on furnishers, under the FCRA, when an "accommodation" was provided to a consumer. See 15 U.S.C. § 1681s-2(a)(1)(F) *et seq.*

14

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves violations of the Fair Credit Reporting Act, 15 US.C. § 1681 *et seq*.

4. Venue is proper in this district under 28 U.S.C. §1391(b)(2) because the acts and transactions that give rise to this action occurred, in substantial part, in this district.

## DEFINITIONS

5. As used in reference to the FCRA, the terms "person," "consumer" "consumer reporting agency," "consumer report", "accommodation" and "covered period" are defined in § 1681a and 1681s-2(a)(1)(F)(i) of the FCRA.

## PARTIES

6. Plaintiff, CASTILLO, is a natural person and a resident of Westchester County, State of New York, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

7. PENFED is a foreign company with its principal place of business at 7940 Jones Branch Dr., Tysons, Virginia 22102.

8. PENFED is a foreign company that receives mail at PO Box 1432, Alexandria, Virgina 22313.[2]

9. PENFED is a foreign company that receives email at Info@hq.pendfed.org.

10. PENFED is a "person" as defined by 15 U.S.C. § 1681a(b).

11. Upon information and belief, Defendant PENFED furnishes information to consumer reporting agencies.

---

[1] https://www.govinfo.gov/content/pkg/PLAW-116publ136/html/PLAW-116publ136.htm (*last visited June 23, 2022*)

[2] https://www.penfed.org/contact-us (*last visited June 23, 2022*)

14

12. John Does 1-25, are fictitious names of individuals and businesses alleged for the purpose of substituting names of defendants whose identities will be disclosed in discovery and should be made parties to this action.

## FACTUAL ALLEGATIONS

13. On or before March 27, 2020, Plaintiff allegedly incurred a financial obligation to PENFED.

14. Plaintiff was assigned an account number ending in 2817 for the PENFED obligation.

15. In response to the COVID-19 Pandemic, the CARES Act was enacted on March 27, 2020.

16. The purpose of the CARES Act was to ease the financial burden on individuals due to the impact of COVID-19.

17. Plaintiff is a registered nurse and is an "essential worker" as defined by the Center for Disease Control Prevention ("CDC").[3]

18. At the height of the COVID-19 Pandemic, Plaintiff was employed by a private company where he was tasked with providing residential home healthcare services to patients discharged from various New York hospitals after the patients were treated for COVID-19.

19. Accordingly, Plaintiff's employment potentially exposed him to COVID-19.

20. Given that Plaintiff could potentially be exposed to COVID-19, causing him to be out of work, at some time prior to September 2020, Plaintiff contacted PENFED to obtain a skip payment (or payments) related to the PENFED obligation.

21. As of September 2020, Plaintiff was current on his payments for the PENFED

---

[3] https://www.cdc.gov/vaccines/covid-19/categories-essential-workers.html (*last visited June 23, 2022*)

obligation.

22. As of September 2020, Plaintiff was not delinquent on his payments for the PENFED obligation.

23. As of September 2020, the PENFED obligation was not charged off.

24. At some time prior to September 2020, PENFED granted Plaintiff's request for skip payments of the PENFED obligation.

25. The skip payments were an "accommodation" pursuant to 15 U.S.C. 1681s-2(a)(1)(f)(i)(I).

26. Upon information and belief, the skip payments included, but were not limited to, the months of September 2020 and October 2020.

27. Accordingly, when PENFED granted Plaintiff's request for skip payments, was during the "covered period" pursuant to 15 U.S.C. 1681s-2(a)(1)(f)(i)(II). [4]

28. In reliance on PENFED granting Plaintiff a skip payment for September 2020, he did not make a payment towards the PENFED obligation for September 2020.

29. In reliance on PENFED granting Plaintiff a skip payment for October 2020, he did not make a payment towards the PENFED obligation for October 2020.

30. Despite the fact that PENFED granted Plaintiff a skip payment for September 2020, PENFED reported Plaintiff delinquent for the PENFED obligation for September 2020 to one, or more, consumer reporting agencies ("CRA").

31. Despite the fact that PENFED granted Plaintiff a skip payment for October 2020, PENFED reported Plaintiff delinquent for the PENFED obligation for October 2020 to one, or more,

---

[4] https://www.uhc.com/broker-consultant/news-strategies/resources/president-biden-extends-national-emergency-declaration-due-to-covid-19 (*last visited  June 23, 2022*)

14

CRAs

32. On or about October 2020, Plaintiff's credit report with one more CRAs stated he was delinquent on the PENFED obligation for September 2020.

33. On or about October 2020, Plaintiff's credit report with one more CRAs stated he was delinquent on the PENFED obligation for October 2020.

34. On or about October 2020, and to take advantage of record low interest rates, Plaintiff attempted to refinance his home as well as consolidating certain other debt (in the amount of approximately $90,000) from Washington Equities Mortgage Corp. ("Washington Equities")[5]

35. On or about October 2020, Plaintiff's interest rate for his home mortgage was 4.00%

36. Specifically, Washington Equities offered Plaintiff an interest rate of 2.875% on a $510,000 loan.

37. Based on PENFED reporting Plaintiff delinquent on the PENFED obligation for September 2020 to one or more CRAs, and Plaintiff's corresponding credit report, Washington Equities would not provide Plaintiff with the loan.

38. Based on PENFED reporting Plaintiff delinquent on the PENFED obligation for October 2020 to one or more CRAs, and Plaintiff's corresponding credit report, Washington Equities would not provide Plaintiff with the loan.

39. In or around November 2020, Plaintiff contacted CRAs Equifax and Experian to dispute the September 2020 PENFED obligation delinquency and October 2020 PENFED obligation delinquencies.

40. In or around November 2020, Plaintiff also contacted PENFED to dispute the

---

[5] https://www.forbes.com/advisor/mortgages/mortgage-interest-rates-10-22-20/ (*last visited June 10, 2022*); see also https://www.forbes.com/sites/robertberger/2020/10/23/mortgage-rates-fall-to-50-year-low/?sh=2e9a9d063323 (*last visited June 23, 2022*)

inaccuracies with PENFED's reporting of the September 2020 and October 2020 delinquencies to the CRAs.

41. In or around December 2020, and in response to Plaintiff's dispute with Equifax, Equifax provided notice of a dispute to PENFED, and verified that the September 2020 and October 2020 delinquencies regarding the PENFED obligation were reported correctly. This is despite the previously agreed-upon skip payments granted to Plaintiff by PENFED.

42. In or around December 2020, and in response to Plaintiff's dispute with Experian, Experian provided notice of a dispute to PENFED, and verified that the September 2020 and October 2020 delinquencies regarding the PENFED obligation were reported correctly. This is despite the previously agreed-upon skip payments granted to Plaintiff by PENFED.

43. On January 13, 2021 PENFED issued a press release entitled "PenFed Announces Record 2020 Results" (the "press release").[6]

44. The press release stated in relevant part: "PenFed Credit Union, the nation's second largest federal credit union, today released financials highlighting the strongest year in the institution's 85-year history. In 2020, PenFed set records for membership growth, mortgage loan volume and consumer loan volume, while helping more members through the global pandemic…"

45. The press release further stated, in relevant part: "…Members who experienced financial hardship as a result of COVID-19 were able to skip payments and apply for other special assistance…"

46. As of April 2021, PENFED was still reporting to one or more CRAs that Plaintiff was delinquent on the PENFED obligation for September 2020.

47. As of April 2021, Plaintiff's credit report with one more CRAs stated he was

---

[6] https://www.penfed.org/learn/penfed-announces-record-2020-results (*last visited June 23, 2022*)

delinquent on the PENFED obligation for September 2020.

48. As of April 2021, PENFED was still reporting to one or more CRAs that Plaintiff was delinquent on the PENFED obligation for October 2020.

49. As of April 2021, Plaintiff's credit report with one more CRAs stated he was delinquent on the PENFED obligation for October 2020.

50. In April 2021, Plaintiff communicated with Freedom Mortgage Corporation ("Freedom Mortgage") who indicated that he could refinance his home for a 3.50% interest rate on a loan amount of $401,356, for his home mortgage; however, Plaintiff could not consolidate the other remaining loans (of approximately $90,0000) that he could have been able to do with Washington Equities.

51. Upon information and belief, Freedom Mortgage did not consider Plaintiff's credit report when offering him the 3.50% interest rate to refinance his home mortgage only without consolidation of the other (approximately $90,000) remaining loans.

52. Put another way, in order take advantage of the 3.50% interest rate offered by Freedom Mortgage (which was significantly higher, and for drastically different terms than Washington Equities), Plaintiff could only apply for a home loan, and not include a consolidation of the approximate $90,000 in other debts.

53. In or around May 2021, Plaintiff, again, communicated with Freedom Mortgage, who indicated that he could refinance his home for a 2.75% interest rate on a loan amount of $401,356, for his home mortgage only without consolidation.

54. Upon information and belief, Freedom Mortgage did not consider Plaintiff's credit report when offering him the 2.75% interest rate to refinance his home mortgage only without consolidation.

14

55. Put another way, in order take advantage of the 2.75% interest rate offered by Freedom Mortgage (which was for drastically different terms than Washington Equities), Plaintiff could only apply for a home loan, and not include a consolidation of the approximate $90,000 in other debts.

56. PENFED's conduct was willful and reckless.

## COUNT I
## 15 U.S.C. § 1681s-2(b)

58. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

59. 15 U.S.C. § 1681s-2(b) of the FCRA states in relevant part:

After receiving notice pursuant to section 611(a)(2) [15 USCS § 1681i(a)(2)] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall

**(A)** conduct an investigation with respect to the disputed information;

**(B)** review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [15 USCS § 1681i(a)(2)];

**(C)** report the results of the investigation to the consumer reporting agency;

**(D)** if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

**(E)** if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

**(i)** modify that item of information;
**(ii)** delete that item of information; or
**(iii)** permanently block the reporting of that item of information.

**(2)** Deadline. A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 611(a)(1) [15 USCS § 1681i(a)(1)] within which the consumer reporting agency is required to complete actions required by that section regarding that information.

60. PENFED violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by failing to review all relevant information regarding the PENFED obligation.

61. PENFED violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by failing to accurately respond to Equifax.

62. PENFED violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by failing to correctly report results of an accurate investigation to every credit reporting agency.

63. PENFED violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the PENFED obligation to the consumer reporting agencies.

64. As a result of this conduct, action and inaction of PENFED, Plaintiff suffered damage by loss of credit.

65. As a result of this conduct, action and inaction of PENFED, Plaintiff suffered loss of the ability to purchase and benefit from credit.

66. PENFED's conduct, action and inaction was willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

67. In the alternative, PENFED's conduct, action and inaction was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

68. Plaintiff is entitled to recover costs and attorney's fees from PENFED in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

(a) Issuing a preliminary and/or permanent injunction restraining Defendants, their employees, agents and successors from, *inter alia,* engaging in conduct and practices that are in violation of the FCRA;

(b) Issuing a declaratory Order requiring Defendants to make corrective disclosures;

(c) Awarding Plaintiff statutory damages;

(d) Awarding Plaintiff actual damages;

(e) Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses;

(f) Awarding pre-judgment interest and post-judgment interest; and

(g) Awarding Plaintiff such other and further relief as this Court may deem just and proper.

Dated: New York, New York
June 23, 2021

/s/ Joseph K. Jones
Joseph K. Jones, Esq.
JONES, WOLF & KAPASI, LLC
One Grand Central Place
60 East 42nd Street, 46th Floor
New York, New York 101065
(646) 459-7971 telephone
(646) 459-7973 facsimile
jkj@legaljones.com

/s/ Benjamin J. Wolf
Benjamin J. Wolf, Esq.
JONES, WOLF & KAPASI, LLC
One Grand Central Place
60 East 42nd Street, 46th Floor
New York, New York 101065
(646) 459-7971 telephone
(646) 459-7973 facsimile
bwolf@legaljones.com
*Attorneys for Plaintiff*

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

/s/ Joseph K. Jones
Joseph K. Jones